DAVIS, Judge:
U.S. Air Force veteran Steve W. Mount-ford appeals through counsel from a February 26, 2009, Board of Veterans’ Appeals (Board) decision that denied entitlement to restoration of benefits for his service-connected schizophrenia prior to May 25, 2004, because he was found to be a “fugitive felon” under 38 U.S.C. § 5313B.
On December 27, 2001, Congress enacted 38 U.S.C. § 5313B. That statute bars veterans and their dependents from receiving VA benefits while veterans or their beneficiaries are “fugitive felons.” 38 U.S.C. § 5313B(a). Mr. Mountford argues that the Board’s determination that he was a fugitive felon from December 21, 2001, to May 25, 2004, pursuant to section 5313B was erroneous as a matter of law and that his benefits should be fully restored for that period. For the following reasons, the Court will affirm the Board’s February 2009 decision.
I. BACKGROUND
Mr. Mountford served on active duty in the U.S. Air Force from October 1977 until August 1978 when he was granted medical retirement. On November 16, 1978, Mr. Mountford was awarded service connection for schizophrenia.
Later, in April 1994, after pleading nolo contendere to charges of felony burglary and criminal mischief in Florida, Mr. Mountford was granted leniency and placed on probation.[1] See Record (R.) at 295. In September 1994, based on Mr. Mountford’s probation officer’s sworn statement that Mr. Mountford had violated *445 his probation,[2] an arrest warrant was issued. That warrant remained unserved and outstanding for nearly 10 years. See id. at 296, 373.
On December 27, 2001, while Mr. Mountford’s warrant was outstanding, Congress enacted 38 U.S.C. § 5313B, which provides in part that “[a] veteran who is otherwise eligible for a benefit ... may not be paid or otherwise provided such benefit for any period during which such veteran is a fugitive felon.” 38 U.S.C. § 5313B(a). The statute defines “fugitive felon,” as a person who is a fugitive by reason of
(A) fleeing to avoid prosecution, or custody or confinement after conviction, for an offense, or an attempt to commit an offense, which is a felony under the laws of the place from which the person flees; or
(B) violating a condition of probation or parole imposed for commission of a felony under Federal or State law.
38 U.S.C. § 5313B(b)1(A), (B).
In April 2004 VA notified Mr. Mountford of the warrant and informed him that his benefits could be temporarily suspended pursuant to the fugitive felon statute. Shortly thereafter Mr. Mountford turned himself in and was found guilty of both the violation and the underlying crimes and was sentenced to time served effective May 25, 2004.[3] See R. at 106-07. On June 4, 2004, VA sent Mr. Mountford notice stating: “Effective December 27, 2001 your monthly compensation benefits are terminated.” R. at 331. On June 16, 2004, Mr. Mountford, with the help of the American Legion, submitted paperwork to VA to have his benefits reinstated. See id. at 290, 295, 296, 298. The evidence submitted at this time included documentation of a judgment against Mr. Mountford for the underlying crimes of felony burglary and criminal mischief as well as an admission to the violation of probation. See id. at 295-96. There was no evidence submitted, however, of the warrant being cleared or any information regarding when the warrant was served.
On July 2, 2004, the Togus, Maine, regional office (RO) erroneously informed Mr. Mountford that his benefits had been reinstated as of the date of the initial termination, December 27, 2001, effectively eliminating any period in which he was a fugitive felon under section 5313B. See id. at 288-89. The error appears to have been caused by the RO’s lack of information regarding the date the warrant was served. See id. at 290, 295, 296.
In February 2006, VA notified Mr. Mountford that it was informed of the existence of the same warrant by law enforcement authorities and that the warrant was still outstanding. See id. at 167-68. On July 31, 2006, VA first learned that the warrant was served on May 25, 2004. See id. at 162. In August 2006, based on the newly obtained evidence, the Togus RO found that Mr. Mountford had wrongfully received benefits from December 27, 2001, to May 25, 2004, because of his fugitive felon status, causing an overpayment in excess of $63,000.[4] See id. at 159-61. Mr. *446 Mountford does not dispute any of these facts.
The question before the Court is whether an adjudication of guilt is required under 38 U.S.C. § 5313B(1)(b) for a veteran to be considered a fugitive felon. The Court’s inquiry into the proper interpretation of section 5313B is a question of law, and the Court reviews the Board’s interpretation de novo. See Butts v. Brown, 5 Vet.App. 532, 539 (1993) (en banc); see also Hensley v. West, 212 F.3d 1255, 1262-64 (Fed.Cir.2000) (discussing proper application of de novo review).
II. ARGUMENTS OF THE PARTIES
A. The Appellant
Mr. Mountford argues that the Court should reverse the Board’s finding that the appellant was a “fugitive felon” under 38 U.S.C. § 5313B for the period December 27, 2001, through May 25, 2004, because an adjudication of guilt is required under the statute and was not entered until June 2004. Appellant’s Brief (Br.) at 7. He contends that the language “commission of a felony” signals Congress’s desire to include as fugitive felons only those who have been adjudicated guilty of a felony— not those, like him, who have pled nolo contendere. Id.
Similarly Mr. Mountford contends that the Board interpreted 38 U.S.C. § 5313B(b)(1)(B) in such a way as to inflict upon him an unconstitutional bill of attainder and deprive him of his protected property interest in the continued receipt of VA disability benefits without due process. Id. at 12-15.
Alternatively, he argues that the Court should reverse the Board’s finding that he was a fugitive felon under 38 U.S.C. § 5313B because a plea of nolo contendere does not act as an admission of guilt for purposes of subsequent civil proceedings. Id. at 15-18.
B. The Secretary
The Secretary responds that Mr. Mount-ford was a fugitive felon under 38 U.S.C. § 5313B(b)(1)(B) because he violated the terms of his probation for the commission of a felony, not for the underlying felony. Secretary’s Br. at 9-11. Therefore, whether or when appellant was adjudicated guilty of felony burglary has no bearing on VA’s application of the fugitive felon statute in this case. Id. at 11-12.
The Secretary also responds that Mr. Mountford’s interpretation of 38 U.S.C. § 5313B does not meet the elements of a bill of attainder. Id. at 15-24. He points out that for a law to be a bill of attainder it must “legislatively determinen guilt and inflict[] punishment without provision of the protections of a judicial trial.” Id. at 15 (quoting Nixon v. Admin’r of Gen. Servs., 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)). Therefore, he argues that the Board’s interpretation cannot be a bill of attainder because it is not a legislative determination. Id.
Additionally the Secretary responds that the Board did not adjudicate Mr. Mount-ford’s guilt but only found that he was a fugitive felon under the statute for a viola *447 tion of probation. Mr. Mountford was afforded due process because of the procedures used by YA, including notice of the violation, information on how to rectify the violation, a hearing before the decision officer, and the chance to appeal from any findings of the decision officer. Id. at 23. Thus there is no merit to Mr. Mountford’s argument that he was not afforded due process.
III. ANALYSIS
A. Plain Language
The Court, in determining whether an adjudication of guilt is required for a veteran or beneficiary to be a fugitive felon, turns first to the language of the statute. “ ‘Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.’ ” Myore v. Nicholson, 489 F.3d 1207, 1211 (Fed.Cir.2007) (quoting McEntee v. MSPB, 404 F.3d 1320, 1328 (Fed.Cir.2005)). “In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself.” Sursely v. Peake, 22 Vet.App. 21, 24 (2007); see also Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993). “ ‘[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.’ ” Meeks v. West, 12 Vet.App. 352, 354 (1999) (quoting 2A N. Singer, Sutherland on Statutory Construction § 46.05 (5th ed. 1992)).
The plain language of section 5313B(b)(1)(B) provides that a person is a fugitive felon by reason of “violating a condition of probation or parole imposed for commission of a felony under Federal or State law.” 38 U.S.C. § 5313B(b)(1)(B). The plain language is unambiguous: The violation of a condition of probation makes one a fugitive felon. Therefore, the question for VA is whether that probation was imposed based on the commission of a felony. The ambiguity arises in the word “commission.” Mr. Mountford argues that a “commission” requires an adjudication of guilt.
“Commission” is defined as “[t]he act of doing or perpetrating (as a crime).” Black’s Law Dictionary 306 (9th ed. 2009) [hereinafter Blacx’s]. Under Florida law, probation may not be imposed without, at minimum, a plea of nolo contendere by a defendant. Fla. Stat. § 948.01. A plea of nolo contendere is an admission of the facts for the purpose of the pending prosecution. Vinson v. State, 345 So.2d 711 (Fla.1977). While Mr. Mountford is correct that a plea of nolo contendere cannot be used as an admission of the underlying facts in a subsequent civil suit, see id., the imposition of probation is part of the criminal prosecution.
In the present case, the Board noted the following conclusions of law:
(1) Under Florida law, burglary is a felony. See Fla. Stat. § 810.02 (1994).
(2) Under Florida Statutes ... section 948.01, probation may not be imposed without, at minimum, a plea of nolo con-tendere by a defendant; under Florida law, a plea of nolo contendere is an admission of the facts for the purpose of the pending prosecution, [id.].
R. at 6.
Mr. Mountford’s argument that an adjudication of guilt is required under section 5313B(b)(1)(B) would be more convincing had Congress used the phrase “[violating a condition of probation ... imposed for the conviction of a felony under Federal or State law.” The term “conviction” is defined as “[t]he act or process of judicially finding someone guilty of a crime.” Black’s 384. A broader review of the *448 fugitive felon statute reveals that the word “conviction” appears in 38 U.S.C. § 5313B(b)(1)(A). Had Congress intended an adjudication of guilt to be necessary under section 5313B(b)(1)(B), mirroring the language “conviction” used in section 5313B(b)(1)(A) would have been an obvious means of triggering such a requirement. The Court therefore finds that a withholding of adjudication has no bearing on whether a veteran “violated] a condition of probation or parole imposed under commission of a felony.” Congress has not indicated an intention to except those who have already received a benefit in the withholding of adjudication from such pro-defendant statutes as the one Mr. Mount-ford benefited from in Florida. See FL. R.Crin. Proc. 3.670.
As an adjudication of guilt is not required for an individual to be considered a fugitive felon under section 5313B(b)(1)(B), the Court discerns no merit in Mr. Mountford’s argument that 38 U.S.C. § 5313B does not apply to his situation. The Board determined that Mr. Mountford admitted all the facts necessary to find him guilty of felony burglary, but that in lieu of a finding of guilt, a Florida judge granted leniency and withheld a guilty judgment for a felony pending Mr. Mountford’s compliance with the conditions of probation — conditions he violated numerous times in the five months after they were imposed. Mr. Mountford does not dispute any of these facts, specifically that he violated the probation imposed for his act of felony burglary. Mr. Mountford, in 1994, “violated] a condition of probation or parole imposed under commission of a felony under Federal or State law,” despite the fact he was not adjudicated guilty until 2004 and was therefore a fugitive felon from December 27, 2001, to May 25, 2004. See 38 U.S.C. § 5313B(b)(1)(B). As the statute provides, a fugitive felon may not be paid or otherwise provided such benefit for any period during which such veteran is a fugitive felon.
Our colleague’s dissent is based on arguments not raised by the parties, nor discussed at oral argument, and is not central to the main holding. It is not the practice of a court to raise new arguments for the parties. See Roberts v. Shinseki, — F.3d -,-, No. 2010-7104, slip op. at 3 n. 1, 2011 WL 2162899, at *1 n. 1 (Fed.Cir. June 1, 2011) (The Federal Circuit expressly declined to address arguments not raised by the parties.). The dissent attacks the plain-meaning approach of the majority’s definition of “fugitive felon” and argues instead that, because Mr. Mount-ford may not have been aware of the existence of a warrant, he could not be a fleeing felon under the statute. In essence, the dissent is reading into the plain meaning of the words “fugitive felon” a scienter requirement. Nowhere in the statute (section 5313B(b)(1)) or its legislative history is the slightest suggestion that one must have the prerequisite knowledge imposed by the dissent. Rather, “fugitive felon” under this statute is a term of art. The plain language of the statute very simply defines a “fugitive felon” as one who violates the conditions of probation. Congress has spoken with no ambiguity. Moreover, Mr. Mountford was acutely aware of the conditions of his probation, including his duties to pay supervisory fees and submit monthly reports to his probation officer. He certainly was advised and understood the consequences of his failure to comply with the terms and conditions of his probation. Whether or not he had actual knowledge that a warrant had been issued was irrelevant and certainly not a part of the statutory requirement.
B. Due Process
Mr. Mountford next argues that the Board deprived him of his VA benefits *449 without due process “by conceding that Appellant was not adjudicated guilty of any offense in 1994, but determining nonetheless that Appellant, had, in fact, committed a felony offense at that time.” Appellant’s Br. at 14. Because the Court has determined that, based on the plain language of the statute, all that is required to be considered a fugitive felon under section 5313B(b)(1)(B) is a violation of probation for the commission of a felony and not an adjudication of guilt on the underlying felony, this argument also fails.
Since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), it has been clear that due process governs State court procedures for searches and arrests, including the procedures to issue warrants. The Supreme Court has also made clear that the responsibility for the accuracy of warrants lies with the issuing court and not the officials executing the consequences of the warrant:
Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.
Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).
In this case, Mr. Mountford has not even alleged that the procedures of the Florida court system for issuing the warrant in this case violate due process. Hence, the Court has no cause to question whether the warrant for probation violation was issued without probable cause or otherwise in violation of due process. Nor has the appellant alleged that VA’s procedures for determining the existence of the warrant are in any way so error prone or inaccurate as to violate due process. Therefore, the appellant’s allegations that he was denied due process are unfounded.
To the extent that the appellant asserts that he was not provided trial-like procedures to challenge the allegation that he committed the underlying offense, his argument is doubly misplaced. First, as noted above, Mr. Mountford’s guilt of the underlying crime was not the basis of withholding his benefits under the statute. Second, regardless of whether his benefits were withheld based upon his probation violation or his commission of the charged offense, it is the Florida court system— not the Board — that is obligated to provide due process to accurately make these determinations. VA’s obligation is to accurately determine the results of the proceedings in the State court before depriving a veteran of benefits pursuant to the statute. In this case, Mr. Mountford has not even alleged that either system did not perform the duties allocated to it.
C. Bill of Attainder
Finally, Mr. Mountford argues that the Board interpreted the statute in such a way as to inflict upon him an unconstitutional bill of attainder. A bill of attainder is a special legislative act prescribing punishment, without a trial, for a specific person or group. See BlaCK’s 188. Article I, section 9 of the U.S. Constitution prohibits the legislative branch from passing bills of attainder.[5] Accordingly, Congress may *450 not determine guilt and inflict punishment upon an identifiable individual without provision of the protections of a judicial trial. Nixon v. Admin’r of Gen. Sews., supra. The elements of a bill of attainder are (1) specification of affected persons; (2) punishment; and (3) lack of judicial trial. Selective Serv. Sys. v. Minn. Pub. Interest Research Grp., 468 U.S. 841, 847, 104 S.Ct. 3848, 82 L.Ed.2d 632 (1984). “The fact that activity engaged in prior to the enactment of the legislation may be regarded administratively and judicially as relevant” under a statute does not make it an imper-' missible bill of attainder when it is directed to activity that continues after the effective date of the legislation. Communist Party of U.S. v. Subversive Activities Control Bd., 367 U.S. 1, 87, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). “ ‘[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute on [the grounds that it is a bill of attainder].’ ” Id. at 83, 81 S.Ct. 1357 (quoting Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).
The statute in this case is clearly not a bill of attainder for at least three reasons. First, the statute is not directed at Mr. Mountford or any group defined by actions taken prior to the legislation. Second, the punishment is not imposed by the statute in lieu of a judicial proceeding, but rather as an additional consequence of a judicial proceeding. Third, the statute did not punish Mr. Mountford’s pre-enactment behavior, but instead added a consequence to his ongoing probation violation. Thus, Congress was not circumventing the judicial process to intentionally harm Mr. Mountford, but rather was promoting sound public policy by establishing additional consequences to augment the actions of the appropriate criminal courts.[6]
IV. CONCLUSION
Based on the foregoing, the Court AFFIRMS the February 26, 2009, Board decision.
KASOLD, Chief Judge, filed a dissenting opinion.

. The Florida courts stem contains a pro-defendant provision where a trial judge may withhold adjudication of guilt if the judge places the defendant on probation and judgment is withheld subject to compliance with the conditions of that probation. Fl. R.Crim. P. 3.670.

. The probation officer’s sworn statement provided that Mr. Mountford had violated the conditions of his probation by failing to submit two monthly written reports and pay three months of supervisory fees totaling $156.

. Mr. Mountford was actually adjudicated guilty June 2, 2004, but the Florida court recognized the violation of probation and adjudication of guilt as of May 25, 2004, the date the warrant was served.

.While the RO in February 2006 determined that Mr. Mountford had received an overpayment in benefits, it did not find that the July 2, 2004, RO decision contained clear and *446 unmistakable error. See 38 C.F.R. § 3.105 (2010). However, counsel for appellant at oral argument conceded that any error in VA’s failure to follow procedure in the August 2006 decision was harmless. See Oral Arg. at 19:33-20:45, available at http://uscourts.cavc. gov/oraLarguments/2011 OralArguments.cfm; see also 38 U.S.C. § 7261; see also Marciniak v. Brown, 10 Vet.App. 198, 201 (1997) (indicating appellant must allege and demonstrate prejudice or Court will conclude procedural error is harmless). Moreover, as a result of the July 2004 error, Mr. Mountford in effect received an interest-free loan from the Government for more than two years and therefore actually benefitted from the mistake.

. The bill of attainder clause traditionally applies only to prevent Congress from passing *450 unjust legislation, not to impede a member of the executive branch, in this case the Secretary in interpreting an otherwise permissible statute.

. Here, although not raised by the parties, the dissent additionally argues that section 5313B does not allow the Secretary to recover benefits he has already paid but only prohibits the Secretary from making payments to fugitive felons. If section 5313B were the only statute at play in this process, perhaps the dissent would have a point; however, that is not the case. Pursuant to 38 U.S.C. § 3685(a), "[w]henever the Secretary finds that an overpayment has been made to a veteran ..., the amount of such overpayment shall constitute a liability of such veteran or ... to the United States.” "Any overpayment referred to in subsection (a) ... may be recovered ... in the same manner as any other debt due to the United States." 38 U.S.C. § 3685(c); see also 38 U.S.C. § 5314(a) ("[T]he Secretary shall ... deduct the amount of the indebtedness of any person who has determined to be indebted to the United States by virtue of such person’s participation in a benefits program administered by the Secretary from future payments made to such person under any law administered by the Secretary." (Emphasis added)). Thus, there was no need for section 5313B to specifically mention the recovery of benefits.