Citation Nr: 1641937 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 10-36 070 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Propriety of non-payment of VA compensation benefits from July 24, 2008 to August 19, 2009, based on fugitive felon status.

2. Entitlement to an increased evaluation above 10 percent for patellofemoral arthritis of the right knee.

3. Entitlement to an increased evaluation above 10 percent for patellofemoral arthritis of the left knee.


REPRESENTATION

Appellant represented by: N. Albert Bacharach, Jr., Attorney


WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

Matthew Schlickenmaier, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from March 1980 to January 1981.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in July 2009 and June 2011 by the St. Petersburg, Florida, Regional Office (RO) of the Department of Veterans Affairs (VA). The July 2009 RO decision determined that the Veteran was not entitled to payment of VA compensation benefits for the period from July 24, 2008 to August 19, 2009, based on fugitive felon status. The June 2011 RO decision denied the Veteran's claim of entitlement to a rating increase above the current 10 percent evaluations assigned to each knee for bilateral patellofemoral arthritis.

In September 2014, the Board remanded the appeal for a hearing. In October 2015, the Veteran testified at a Travel Board hearing before the undersigned. A transcript of the hearing is of record. The Veteran has requested a second Travel Board hearing in this appeal. Regulations provide for a hearing on these matters, so additional evidence may be submitted, but an additional hearing is not indicated. See 38 C.F.R. §§ 20.703, 20.704, 20.705.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into account the existence of these electronic records.

The issues of entitlement to increased evaluations above 10 percent for patellofemoral arthritis of the right and left knees and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The evidence is evenly balanced as to whether the warrant issued on July 24, 2008 that gave rise to the Veteran's fugitive felon status for the period from July 24, 2008 to August 19, 2009 was valid to the extent it was based on an actual violation of parole or probation.


CONCLUSION OF LAW

Resolving reasonable doubt in favor of the Veteran, termination of benefits for the period from July 24, 2008 to August 19, 2009 for reasons of fugitive felon status was not proper. 38 U.S.C.A. §§ 5107, 5313B (West 2014); 38 C.F.R. §§ 3.102, 3.665 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

By way of background, the Veteran in this case was granted entitlement to service connection for chondromalacia of the knees in August 1981; those diagnoses were subsequently changed to patellofemoral arthritis. In May 2009, the RO received notification from law enforcement that the Veteran was the subject of an outstanding arrest warrant, and proposed to suspend his benefit for the time period during which he was a "fugitive felon." The same month the RO mailed a letter to the Veteran notifying him of the proposed action. In July 2009, the RO took the action that it proposed, suspending the Veteran's benefits between July 24, 2008 and August 19, 2009, the date the RO was notified that the warrant had been cleared.

The Veteran claims that he had no knowledge of the warrant and that the warrant was issued erroneously because he did not actually violate the conditions of his probation.

A Veteran who is otherwise eligible for a benefit may not be paid or otherwise provided such benefit for any period during which such Veteran is a fugitive felon. 38 U.S.C.A. § 5313B(a). A fugitive felon is defined as including, but not limited to, a person violating a condition of probation or parole imposed for a felony under state or federal law. 38 U.S.C.A. § 5313B; 38 C.F.R. § 3.665(n)(2)(ii).

A review of the record shows that in May 2009, the RO received notification from the VA Office of Inspector General that on July 24, 2008, the Bainbridge Georgia Sheriff's Office had issued a warrant for the Veteran for obstructing justice. Accordingly, in May 2009, the RO notified the Veteran that he had been identified as a fugitive felon and that VA was planning on terminating his compensation benefits effective July 24, 2008.

A December 2009 internal VA document shows that in June 2009, the Veteran phoned the RO and provided the name and phone number of his probation officer who the Veteran claimed would be able to clarify the matter to prevent a delay in payment of disability compensation. A notation indicates that someone at the RO sent a VA Form 119 Report of Contact to the VA team. There is no indication that the probation officer was contacted.

The same document shows that the Veteran phoned the RO on July 15, 2009, again requesting that the RO call his probation officer to clear up the matter. While a notation indicates that a VA Form 119 Report of Contact was completed, there is no indication that the probation officer was contacted.

A July 2009 Alachua County Sheriff's Office property report shows that the Veteran was incarcerated by that office on July 15, 2009.

The December 2009 internal VA document shows that on July 17, 2009, the Veteran called the RO once more to request that the RO contact his probation officer. No attempts were made to contact the officer.

In an August 2009 notice of disagreement, the Veteran alleged that he first learned of the outstanding warrant through the May 2009 letter and that since that time his probation officer had assured him that the warrant was the result of a technical error but that the best course of action would be to turn himself in and get the warrant dismissed a judicial hearing. The Veteran reported that at that time he was still incarcerated in the Alachua County Sheriff's Office and that he was waiting to be transferred to the Bainbridge, Georgia Sheriff's Office. The Veteran again requested that VA contact his probation officer to verify what had happened.

An August 19, 2009 letter from the Decatur County Sheriff's Office to VA reveals that by that time the Veteran's warrant had been cleared and he was in custody at that facility.

In October 2009, the Veteran submitted a document from the Superior Court for the County of Decatur Georgia showing that on its own motion, the Veteran's probation had been terminated effective September 22, 2009. It noted, in pertinent part, that, 

The Defendant was placed on probation on the 7th day of November 2005 for the offense of Theft By Receiving Stolen Property and was sentenced to ten (10) years, upon service of three (3) years the remainder of seven (7) years to be served on probation and other general and special conditions of probation. The Defendant alleged to have violated the terms and conditions of his probation in that on the 11th day of June, 2008, the Defendant did fail to report to Bainbridge Probation Office, Bainbridge, Decatur County, Georgia upon his release from parole. Based on the facts and circumstances surrounding this Probationer, it would be in the best interest of justice to terminate the time remaining on probation. Now the State prays that the Motion to Terminate Probation be granted.

Again, the Veteran here insists that he was unaware of the outstanding warrant until notified by VA at which time he attempted to take remedial action. He further contends that the warrant was the result of a technical error and not an actual probation violation.

As to his first contention, the Board notes that actual knowledge is not required for one who violates the conditions of probation under 38 U.S.C.A. § 5313B(b)(1)(B). See Mountford v. Shinseki, 24 Vet. App. 443, 448 (2011). Hence, assuming the warrant in this case was validly issued in connection with a violation of parole or probation, the Veteran's argument would fail.

There appears to be, however, some support for his claim that the warrant was issued in error. It is not clear what "facts and circumstances" compelled the Superior Court for the County of Decatur Georgia to terminate the appellant's probation on its own motion but such an action would normally require a showing that "probation is no longer necessary or appropriate for the ends of justice, the protection of society, and the rehabilitation of the defendant." GA. CODE ANN. § 17-10-1(a)(5)(A) (2016). Presumably, if the Veteran were in actual violation of probation for more than one year, he would not be a strong candidate for early termination. In this regard, it appears significant that the Superior Court chose to describe the Veteran's failure to report as an "alleged" violation of the terms and condition of his probation.

This matter is not very clear, however, and while the appellant has presented evidence that raises some question as to whether he was in fact in violation of probation, the evidence is by no means conclusive. The Board does not believe that a remand to attempt to obtain clarifying documents or information would be fruitful given the passage of time, as well as the need for cooperation from various state agencies. See Massie v. Shinseki, 25 Vet. App. 123, 128 (2011) (citing Coburn v. Nicholson, 19 Vet. App. 427, 434 (2006) (Lance, J., dissenting) (noting that an unnecessary remand "perpetuates the hamster-wheel reputation of veterans law"). Notably, although the Veteran made multiple requests to the RO to contact his probation officer to verify that the warrant had been issued erroneously, there is no indication that the RO did so despite having been provided his name and phone number. See M21-1, Part X, Chap. 16, Sec. 3.c. (providing that "if the beneficiary...does not furnish acceptable documentary proof that the fugitive status has ended but does furnish the name and address or telephone number of an official, such as a parole officer, who can verify the fugitive status, then contact that official"). Finally, while the Veteran has a clear pecuniary interest in providing testimony that would support his claim, his statements as to this matter have been remarkably consistent since the matter arose and therefore lend credibility to his assertions.

Accordingly, based on the information presently before the Board, the evidence is evenly balanced as to whether the warrant issued on July 24, 2008 that gave rise to the Veteran's fugitive felon status was valid to the extent it was based on an actual violation of parole or probation. The Veteran is therefore entitled to the benefit of the doubt. 38 U.S.C.A. § 5107. The benefit of the doubt rule is a unique standard of proof, and "the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding such benefits." Wise v. Shinseki, 26 Vet. App. 517, 531 (2014). The appeal is granted.


ORDER

Non-payment of VA compensation benefits from July 24, 2008 to August 19, 2009, based on fugitive felon status was not proper.


REMAND

As to increased ratings for the knees, initially, the Board notes that although the June 2011 rating decision and subsequent statement of the case found that the present claim arose from a November 2010 claim, the Board's review of the claims file indicates that the present appeal arises from a September 2004 claim. By way of background, in July 2003, the Veteran timely appealed a June 2003 rating decision denying entitlement to higher ratings for left and right chondromalacia. In the notice of disagreement, which had been stamped as mailed from a penal institution, the Veteran informed VA of his new address. Although in January 2004 the RO mailed the statement of the case to the new address, the following month the Post Office returned the documents as undeliverable because the Veteran was not located at that address. In a September 2004 correspondence, the Veteran requested to "reopen" the claims for left and right chondromalacia. He also noted that, "I did not receive the correspondence dated January 27, 2004. Please see correct mailing address." The address associated with the September 2004 correspondence was different from the one noted in the notice of disagreement. In December 2004, the RO mailed the Veteran a letter informing him that because he had not timely perfected the appeal, the appeal had been closed. The letter further informed the Veteran that the RO would consider the September 2004 correspondence as a new claim for benefits and that a VCAA letter would be forthcoming. The next rating decision to address the issues of entitlement to higher ratings for the knees was the June 2011 rating decision.

In light of the above, the Board finds that the present appeal arises from the September 2004 claim. While it appears that the Veteran did not actually receive the January 2004 statement of the case, VA mailed to the Veteran's last known address and there is no indication that the Veteran timely notified VA of any change of address. Moreover, he has not contested the December 2004 determination that the September 2004 correspondence was a new claim. Accordingly, since the June 2011 rating decision was the first decision to address the knees since the September 2004 correspondence, the appeal arose from that claim.

As to the merits, the Veteran was most recently provided a VA knee examination in December 2010. Although the December 2010 VA examiner noted that range of motion in the right knee was between zero and 110 degrees, and between 10 and 110 degrees in the left, and indicated where the Veteran reported pain, it is not clear whether this was active or passive range of motion, in weight-bearing or in nonweight-bearing. See Correia v. McDonald, 28 Vet. App. 158 (2016) (holding that 38 C.F.R. § 4.59 requires that an adequate VA examination of the joints must, wherever possible, include the results of the range of motion testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint). Moreover, at the October 2015 hearing, the Veteran reported that his knee condition had worsened. See Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered "contemporaneous").

Accordingly, the case is REMANDED for the following action:

1. The Veteran must be afforded a VA examination to evaluate the current severity of his left and right knee patellofemoral arthritis. The electronic claims folders should be made available to the examiner for review in conjunction with the examination and the examiner should acknowledge such review in the examination report. Any indicated studies should be performed.

The examination should be conducted in accordance with the current disability benefits questionnaires or examination worksheets applicable to the knees. Range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing, for the joints in question must be conducted. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. The rationale for all opinions expressed must be provided.

2. After completion of the above, the AOJ should determine if any additional development is warranted, and if so, such development should be completed.

3. After completion of the above, readjudicate the claims. The AOJ is advised that the appeals relating to the knees arose from the September 2004 claim. If any benefit requested on appeal is not granted to the Veteran's satisfaction, the appellant and his representative should be furnished a supplemental statement of the case, which addresses all of the evidence obtained after the issuance of the last supplemental statement of the case, and provided an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs