**DISABLED AMERICAN VETERANS, et al., Appellees,**

v.

**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, Appellants.**

**No. 1367, Docket 92–6043.**

United States Court of Appeals, Second Circuit.

Argued March 18, 1992.

Decided March 19, 1992.

Opinion Filed April 13, 1992.

Diogenes P. Kekatos, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., and Gabriel W. Gorenstein, Asst. U.S. Atty., on the brief), for appellant U.S. Dept. of Veterans Affairs.

Joseph C. Zengerle, Washington, D.C. (Stephanie B. Lindquist, and Bingham, Dana & Gould, Washington, D.C.; Joanne D'Alcomo, and Bingham, Dana & Gould, Boston, Mass.; David C. Singer, and Dorsey & Whitney, New York City, on the brief), for appellees Disabled American Veterans, et al.

Ronald S. Hamburg, Arlington, Va., submitted a brief, for amici curiae National Alliance for the Mentally Ill, et al.

Before: TIMBERS, MESKILL, and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant United States Department of Veterans Affairs (VA) appeals from an order entered February 3, 1992 in the Southern District of New York, Shirley Wohl Kram, District Judge, 783 F.Supp. 187, granting a motion by appellees Disabled American Veterans, et al. (Veterans) for a preliminary injunction preliminarily enjoining the VA from applying or enforcing Section 8001 of the Omnibus Budget Reconciliation Act of 1990, 38 U.S.C. § 3205 (Supp. II 1990), and denying the VA's motion to dismiss. (Section 3205, as well as other sections of Title 38, recently were recodified by Pub.L. No. 102–40, Title IV, § 402(b)(1), 105 Stat. 187, 238 (May 7, 1991). Section 3205 is now 38 U.S.C. § 5505. For clarity, all references to sections of Title 38 will be to their old section numbers.)

Section 3205, which became effective on November 1, 1990 and expires on September 30, 1992, provides:

"In any case in which a veteran having neither spouse, child, nor dependent parent is rated by the Secretary in accordance with regulations as being incompetent and the value of the veteran's estate (excluding the value of the veteran's home) exceeds $25,000, further payment of compensation to which the veteran would otherwise be entitled may not be

made until the value of such estate is reduced to less than $10,000."

The Veterans contend that § 3205 is facially unconstitutional in that it denies them equal protection of the law and due process of law in violation of the Fifth Amendment of the United States Constitution. The VA asserts that the district court lacked subject matter jurisdiction and that the Veterans failed to state a claim upon which relief might be granted. The court held that it had jurisdiction to entertain the Veterans' action, and that the Veterans had demonstrated sufficient risk of irreparable harm and likelihood of success on the merits of their equal protection claim so that their motion for a preliminary injunction should be granted.

On appeal, the VA contends (1) that the district court lacked jurisdiction over the subject matter of this action; and (2) that § 3205 reflects a rational exercise of the legislative powers of Congress and therefore does not violate the Veterans' constitutional right to equal protection of the law.

For the reasons that follow, we vacated, by a separate order entered March 19, 1992, the preliminary injunction enjoining application and enforcement of § 3205.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Section 3205(a) suspends payment of compensation benefits to veterans who (1) have no spouse, child or dependent parent; (2) have estates (excluding the veteran's home) valued in excess of $25,000; and (3) are rated incompetent by the Secretary of the VA in accordance with VA regulations, until the value of such veterans' estates is reduced to less than $10,000. VA regulations define "incompetent" as a person who "because of injury or disease lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353 (1991). Section 3205(b) provides that, if veterans denied benefits subsequently are rated competent for a period of at least 90 days, they are entitled to payment of a lump sum in the amount denied pursuant to § 3205(a). Section 3205 overlays § 3203(b)(1)(A), which terminates compensation to mentally incompetent disabled veterans who live in publicly funded institutions at public expense.

Section 3205 was enacted partly as a means of reducing the federal budget deficit and partly due to concerns that VA benefits were "enriching distant relatives who may have had very little to do with the veteran and were not affected by his service to the United States." (September 1980 letter from the Chairman of the House Committee on Veterans' Affairs requesting an audit by the Comptroller General). The General Accounting Office (GAO) conducted an audit and found that an estimated $541 million in VA-derived funds in incompetent veterans' estates would be inherited by heirs other than spouses, children, or dependent parents. The GAO recommended that Congress enact legislation barring the inheritance of VA-derived funds by individuals other than veterans' surviving spouses, children, or dependent parents. Although such legislation was introduced by the Chairman of the House Committee on Veterans' Affairs in March 1982, it was not enacted into law.

In 1987, the VA's Office of Inspector General (OIG) completed an audit of estates maintained for incompetent veterans in four of the VA's fifty-eight regions in order "to assess the need for program changes to minimize inheritance of VA-derived funds by remote heirs." The OIG estimated that some $648 million in assets derived from such veterans' VA compensation benefits were under the control of fiduciaries who control the estates of a vast majority of mentally incompetent veterans receiving compensation benefits. Fiduciaries typically receive a fee for their services based on a small percentage of the income to, or value of, a veteran's estate. The OIG found that upon the death of these veterans, their assets largely would be distributed under the laws of the various states which permit inheritance by remote heirs. In order to minimize the inheritance

of VA-derived funds by remote heirs, the OIG recommended legislation that would reduce the amount of available assets under the direct control of incompetent veterans' fiduciaries.

The OIG also stated that "[i]n addition to reducing funds in veterans' estates subject to inheritance by remote heirs, the recommended legislative change would reduce funds subject to misappropriation by fiduciaries." In support of its statement, the OIG reported that between 1983 and 1987 it had investigated 112 cases, involving funds totalling $1.4 million, where fiduciaries either had misused or stolen the veterans' funds.

In considering the Veterans' motion for a preliminary injunction, the district court assumed that rational basis scrutiny applied to the Veterans' equal protection claim. The district court stated, however, that it reserved judgment on the Veterans' contention, to be made on their motion for summary judgment, that some heightened form of scrutiny is appropriate.

Before reaching the merits of the Veterans' application for a preliminary injunction, the district court addressed the VA's assertion that the district court lacked subject matter jurisdiction. The VA contended that 38 U.S.C. § 211(a) (1988), as recently amended, when read *in pari materia* with 38 U.S.C. §§ 4061 and 4092 (1988), vests exclusive jurisdiction over this controversy in the newly-created U.S. Court of Veterans' Appeals (COVA). Section 211(a) provides in pertinent part:

"(1) The [Secretary of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the [Secretary] under a law that affects the provision of benefits by the [Secretary] to veterans or the dependents or survivors of veterans.... [T]he decision of the [Secretary] as to any such question shall be final and conclusive and may not be reviewed by any other official or any other court...."

The district court held that the plain language of § 211(a) indicates that, while it precludes judicial review of decisions of the Secretary, it does not preclude judicial review of facial challenges to federal legislation affecting veterans' benefits such as those asserted by the Veterans in this action. Moreover, the court held that §§ 4061 and 4092, which provide the COVA and the Court of Appeals for the Federal Circuit with "exclusive jurisdiction" over decisions of the Board of Veterans' Appeals and empower the COVA to "decide all relevant questions of law, [and] interpret constitutional, statutory, and regulatory provisions...." do not extend to the COVA *exclusive* jurisdiction to decide facial constitutional challenges to legislation affecting veterans. The district court therefore proceeded to address the merits of the Veterans' claims that § 3205 deprives them of equal protection of the law.

The court, observing that the legislative history of § 3205 is limited, identified its legitimate legislative objectives as (1) reducing the federal budget deficit; and (2) preventing non-dependent and/or remote heirs of disabled veterans from inheriting VA-funded estates from such veterans. The court rejected the VA's contention that there is a further purpose served by § 3205—namely, preventing misconduct by incompetent veterans' fiduciaries—since it held that "there is no evidence that this was a legislative purpose ever proffered, debated or considered by Congress," and, even if the prevention of fiduciary misconduct were an objective of the legislation, "[t]here is at best anecdotal evidence of a statistically negligible number of *investigations* of fiduciary misconduct which does not ... provide a rational basis for the classification drawn by Section 3205." (emphasis in original).

The court recognized that the ultimate goal of the Omnibus Budget Reconciliation Act of 1990 was reduction of the federal budget deficit. The court held, however, that, because § 3205 targets 13,500 incompetent veterans out of a total of 2.2 million disabled veterans receiving compensation, and will result in a projected savings of only approximately $125 million in fiscal 1991 (or about 1% of the $10.7 billion spent on compensation to disabled veterans), § 3205 will have only a small impact on

achieving the deficit reduction goal. The court stated that "such underinclusiveness is a strong indication that the classification violates equal protection."

The court also held that, because § 3205 targets 13,500 disabled veterans with no immediate dependents (spouses, minor children, or dependent parents), while leaving undisturbed at least 263,000 (and perhaps as many as 611,700) similarly situated *competent* disabled veterans, § 3205 is "patently underinclusive" since the statute can achieve only in a small way, if at all, the objective of reducing the incidence of inheritance of VA funds by nondependent heirs.

Moreover, the court held that neither of the reports relied upon by the VA (those of the OIG and GAO, discussed above) "provide a basis for distinguishing the incompetent veterans, who were the subject of the reports, from similarly situated competent veterans *who were not studied*." (emphasis in original). Finally, the court held that the record "contains no evidence that incompetence is relevant to achieving Congress' objective"; that there was no rational basis for the assumption that the estates of mentally incompetent disabled veterans are more likely to be inherited by remote heirs than are the estates of competent veterans, since incompetency is not the equivalent of lacking testamentary capacity; and incompetent veterans therefore are not necessarily incapable of having or executing wills.

Since the court determined that there is no rational basis for treating incompetent veterans who have no dependents and who possess estates valued in excess of $25,000 differently than similarly situated competent veterans, it held that appellees had made a strong showing of success on their claim that § 3205 violates their right to equal protection of the law. The court also concluded that appellees had made a strong showing of irreparable harm because (1) deprivation of a constitutional right in itself is irreparable harm, and (2) they faced the imminent loss of fiduciary services as a result of their diminished VA benefits.

The court therefore granted appellees' motion for a preliminary injunction enjoining the VA from enforcing or applying § 3205, and denied the VA's motion to dismiss. This appeal followed.

## II.

Before turning to the merits, we set forth our standard of review. We review the district court's grant of the preliminary injunction under the abuse of discretion standard, *Fireman's Fund Ins. Co. v. Leslie & Elliott Co.*, 867 F.2d 150, 150–51 (2 Cir.1989); but we review *de novo* the district court's conclusions of law in connection with its issuance of the preliminary injunction. *Guaranty Fin. Services, Inc. v. Ryan*, 928 F.2d 994, 998 (11 Cir.1991).

## III.

With the foregoing in mind, we turn first to the VA's contention that 38 U.S.C. § 211(a) deprives the district court of subject matter jurisdiction over this action. We agree with the district court that § 211(a) does not deprive it of jurisdiction to hear facial challenges of legislation affecting veterans' benefits.

While it is well established that the district courts possess only that jurisdiction which has been conferred on them by Congress, *Finley v. United States*, 490 U.S. 545, 548 (1989), it also is clear that the Article III district courts have power to rule on the constitutionality of acts of Congress. *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 890 (3 Cir.1986), *cert. dismissed*, 488 U.S. 918 (1988). The VA contention that, pursuant to the Veterans' Judicial Review Act of 1988 (which amended § 211(a)), Congress vested exclusive jurisdiction in the COVA over constitutional challenges to federal statutes affecting veterans' benefits, implicates issues of constitutional separation of powers. *Mistretta v. United States*, 488 U.S. 361, 382–83 (1989) (court must exercise vigilance to ensure that no provision of law threatens the integrity of the judicial branch); *Johnson v. Robison*, 415 U.S. 361, 366 (1974). The district court, cognizant of the principle that courts should "avoid an interpretation of a federal statute that engenders

constitutional issues if a reasonable alternative interpretation poses no constitutional question," *Gomez v. United States,* 490 U.S. 858, 864 (1989), determined that there was such a reasonable alternative here: § 211(a) could be literally construed to exclude judicial review only of "decision[s] by the Secretary," and not of facial constitutional challenges. *Robison, supra,* 415 U.S. at 366–74 (holding that prior version of the statute did not preclude judicial review of action challenging the constitutionality of veterans' benefits legislation).

As amended by the 1988 Act, § 211(a) deprives the district court of judicial review over any "decision of the [Secretary] under a law that affects the provision of benefits by the [Secretary]...." Review of such decisions by the Secretary is reserved to COVA. 38 U.S.C. § 211(a)(2)(D). Here, since the Veterans neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a statutory classification drawn by Congress, the district court had jurisdiction to consider their claim.

### IV.

■ We turn next to the Veterans' contention that § 3205 deprives them of equal protection of the law. The district court held that the Veterans had demonstrated sufficient likelihood of success on their equal protection claim to warrant preliminarily enjoining the VA from applying or enforcing that provision of the statute. We disagree.

### (A)

■ It is well established that the due process clause of the Fifth Amendment embodies equal protection principles. *Mathews v. De Castro,* 429 U.S. 181, 182 n. 1 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 768–70 (1975); *Bowen v. Owens,* 476 U.S. 340, 341 (1986); *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954). The guarantee of equal protection of the law "directs that 'all persons similarly circumstanced shall be treated alike.' " *Plyler v. Doe,* 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415

(1920)); *Cleburne v. Cleburne Living Center Inc.,* 473 U.S. 432, 439 (1985). Congress cannot "legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Eisenstadt v. Baird,* 405 U.S. 438, 447 (1972) (citation omitted). Under the equal protection analysis developed by the Supreme Court, the type of classification drawn by the legislature determines the appropriate level of judicial scrutiny. *Clark v. Jeter,* 486 U.S. 456, 461 (1988). Here, the district court assumed, without deciding, that § 3205 should be scrutinized under the rational basis test. We hold that the rational basis standard governs our review of the constitutionality of § 3205.

■ When Congress legislates in the area of economics and social welfare, review by the courts generally is limited to determining whether there is a rational basis for the classifications drawn. *Bowen v. Owens, supra,* 476 U.S. at 345; *Cleburne, supra,* 473 U.S. at 440; *Mathews, supra,* 429 U.S. at 185. Strict scrutiny is required where the classification drawn "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 (1976) (footnotes omitted). Neither of those circumstances is present in this case. Suspect classifications are those drawn on the basis of race, alienage, or national origin, *Cleburne, supra,* 473 U.S. at 440, or which discriminate against a group " 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " *Murgia, supra,* 427 U.S. at 313 (citation omitted). Fundamental rights generally are those either explicitly or implicitly recognized in the Constitution itself. *Cleburne, supra,* 473 U.S. at 440; *Plyler, supra,* 457 U.S. at 217 n. 15; *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 33–34 (1973). The Supreme Court, to a limited extent, has recognized as fundamental cer-

tain personal rights that are not specifically protected by the Constitution. For example, in *Rodriguez, supra,* 411 U.S. 1, the Court recognized the "constitutional underpinnings of the right to equal treatment in the voting process," *id.* at 34 n. 74, even though "the right to vote, *per se,* is not a constitutionally protected right...." *Id.* at 35 n. 78; *see also Dunn v. Blumstein,* 405 U.S. 330, 336 (1972). The right to vote is fundamental because its free and unimpaired exercise "is preservative of other basic civil and political rights...." *Reynolds v. Sims,* 377 U.S. 533, 562 (1964). While veterans obviously "deserve" the benefits they receive, we are aware of no precedent that would suggest that veterans have a fundamental right to those benefits. *Cf. Dandridge v. Williams,* 397 U.S. 471, 485 (1970) (rational basis standard applies even to legislation involving "the most basic economic needs of impoverished human beings").

The Supreme Court has utilized an intermediate level of scrutiny in determining whether legislation violates the guarantee of equal protection of the law. Intermediate scrutiny, which requires that the statutory classification be substantially related to an important governmental objective, *Jeter, supra,* 486 U.S. at 461, generally has been applied only where the classification drawn by a statute is based on sex or illegitimacy. *Id.; Kadrmas v. Dickinson Pub. Sch.,* 487 U.S. 450, 459 (1988); *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 723–24 (1982). Although in *Plyler, supra,* 457 U.S. 202, the Court applied a heightened level of equal protection scrutiny in striking down a statute which withheld from local school districts funding for the education of children who were not legally admitted into the United States, the Court has been reluctant to extend its analysis in *Plyler* "beyond the 'unique circumstances' that provoked its 'unique confluence of theories and rationales.'" *Kadrmas, supra,* 487 U.S. at 459 (quoting *Plyler*) (citations omitted). Indeed, *Plyler* appears to draw its essence in part from *Rodriguez* and its progeny in that *Plyler* rests in part on the assumption that children who are denied an education will be barred forever from "any meaningful degree of individual political equality...." *Plyler, supra,* 457 U.S. at 233 (Blackmun, J., concurring).

Since § 3205 classifies neither on the basis of sex nor illegitimacy, nor denies meaningful participation in the political process, we hold that heightened scrutiny is not appropriate in this case.

(B)

A legislative enactment such as § 3205 fails the rational basis test if "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [one] can only conclude that the legislature's actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97 (1979). Legislation, such as this, in the area of social welfare "does not violate the Equal Protection Clause merely because the classification[ ] made ... [is] imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70." *Dandridge, supra,* 397 U.S. at 485. Moreover, "[i]t is the responsibility of Congress, not the courts, to determine how public funds should be spent and how they should be raised.... Lines must inevitably be drawn, and it is the legislature's province to draw them." *Brown v. Bowen,* 905 F.2d 632, 635 (2 Cir.1990), *cert. denied,* 111 S.Ct. 979 (1991).

The district court held § 3205 to be irrational in large part because "the record" did not provide sufficient empirical evidence that incompetent veterans with no immediate dependents were any more likely than competent veterans with no immediate dependents to leave their VA-benefit-enhanced estates to non-dependent or remote heirs. Although the Supreme Court,

in applying the rational basis test, on rare occasions has required a factual basis in "the record" for the policy assertedly underlying the statute in question, *e.g., Cleburne, supra,* 473 U.S. 432 (Court held that record did not support zoning requirement that home for mentally retarded acquire a special permit), these departures from the near absolute deference generally accorded legislative judgments under the rational basis test appear "based on factors the Court evidently regards as in some sense 'suspect' but appears unwilling to label as such." Tribe, *American Constitutional Law* § 16–3, at 1445 (2d ed. 1988); *see also Cleburne, supra,* 473 U.S. at 459 (Marshall, J., dissenting) ("The refusal to acknowledge that something more than minimum rationality review is at work here is ... unfortunate.") More traditional rational scrutiny does not require the sort of empirical evidence thought necessary by the district court. *E.g., Lyng v. Castillo,* 477 U.S. 635, 643 (1986) (Court upheld classification on basis of what Congress "might have reasoned."); *Bowen v. Owens, supra,* 476 U.S. at 348 (Court upheld distinction between widowers and divorcees who outlived their spouses because the former "presumably were more likely to depend on their spouses for financial support."); *Kotch v. Board of River Port Pilot Comm'rs.,* 330 U.S. 552, 563 (1947) (Court sustained a law which allegedly encouraged nepotism on the ground that "the benefits to morale and *esprit de corps* which family and neighborly tradition might contribute ... *might* have prompted the legislature to permit ... pilot officers to select those with whom they would serve.") (emphasis added).

There are at least three identifiable legitimate purposes that might have prompted Congress to enact § 3205. First, Congress was concerned with reducing the federal budget deficit. H.R.Rep. No. 881, at 224, *reprinted in* 1990 U.S.Code Cong. & Admin.News 2228. The district court held § 3205 underinclusive because the savings projected to result from § 3205—$125 million in the 1991 fiscal year and $154 million in the 1992 fiscal year—constitute only 1% of the total compensation paid to veterans

during that time period. Moreover, the court held that "such underinclusiveness is a strong indication that § 3205 violates equal protection." We disagree.

In this age of annual federal budget deficits in the vicinity of $400 billion, the temptation may well exist to dismiss any effort to achieve fiscal integrity as ineffectual or "underinclusive." The wiser course, in our view, is to recognize that steps to control the budget deficit, however modest in degree, nonetheless are legitimate, and perhaps necessary, objectives of the Congress and the President. *Lyng v. Automobile Workers,* 485 U.S. 360, 373 (1988); *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 493 (1977). Although the reduction of benefits often leaves some "comparably needy person outside the favored circle," line drawing is best left to the Congress. *Schweiker v. Wilson,* 450 U.S. 221, 238 (1981); *Brown v. Bowen, supra,* 905 F.2d at 635.

Section 3205 also addressed the concern that the VA benefits of incompetent veterans who have no dependents and who have estates valued in excess of $25,000 were "enriching distant relatives who may have had very little to do with the veteran and were not affected by his service to the United States." (September 1980 letter from Chairman of the House Committee on Veterans' Affairs). The audit conducted by the GAO revealed that an estimated $541 million in VA-derived funds in incompetent veterans' estates would be inherited by heirs other than spouses, children, or dependent parents. The OIG found that some $648 million in assets derived from the benefits of incompetent veterans were under the control of fiduciaries and would be distributed under the laws of the various states which allow for inheritance by remote heirs.

The district court recognized that preventing inheritance by remote and/or non-dependent heirs is a legitimate governmental objective. The court concluded, however, that to the extent § 3205 was intended to reduce the incidence of inheritance by non-dependent and/or remote heirs, the section is "patently underinclusive," since

it leaves undisturbed similarly situated competent veterans. Moreover, the court held that the reports of the GAO and OIG do not "provide a basis for distinguishing incompetent veterans who were the subject of the reports, from similarly situated competent veterans *who were not studied.*" (emphasis in original). As stated above, we believe the court erred in requiring empirical evidence clearly demonstrating that the estates of incompetent veterans are more likely to pass to remote or non-dependent heirs who may have had very little to do with the veterans and who may have been unaffected by the veterans' military service. In our view, the classification drawn by § 3205 should be upheld if it is based on a reasonable assumption in light of the known facts. *McGowan v. Maryland,* 366 U.S. 420, 426 (1961) ("A statutory discrimination will not be set aside if any state of facts *reasonably may be conceived to justify it.*") (emphasis added). By definition, a veteran rated "incompetent" by the VA "lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353. Although incompetency is not the equivalent of lacking testamentary capacity, Congress reasonably could have assumed that an incompetent person is less likely than a competent person to die without having executed a will or a codicil to an existing will. Congress therefore reasonably could have concluded that the VA-based assets of incompetent veterans are more likely to be left to non-dependent and/or remote heirs.

Similarly, we hold that the district court erred in rejecting the VA's contention that § 3205 reasonably furthers a legitimate governmental interest in preventing fiduciary abuse. The court held that "there is no evidence that this was a legislative purpose ever proffered, debated or considered by Congress," and that "[t]here is at best anecdotal evidence" of fiduciary misconduct. The court, citing *Hancock Industries v. Schaeffer,* 811 F.2d 225, 239 (3 Cir.1987), concluded that "the trend of recent case-law" requires that only those objectives articulated by Congress may be considered

in determining whether a statute survives equal protection scrutiny. We disagree.

In *Hancock,* the court recognized that it "has no occasion to inquire into the subjective motives of the decisionmakers," and must "accept[ ] at face value contemporaneous declarations of the legislative purposes, or, in the absence thereof, rationales constructed after the fact, unless 'an examination of the circumstances forces [the court] to conclude that they could not have been a goal of the legislation.'" *Id.* at 237 (quoting *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 463 n. 7 (1981)) (other citation and footnote omitted). Here, Congress may well have been concerned with preventing fiduciary abuse, since the OIG had reported in 1987 that it had investigated 112 cases, involving funds of $1.4 million, where fiduciaries had misappropriated incompetent veterans' funds.

We hold that § 3205 survives rational basis scrutiny because it reasonably furthers legitimate governmental interests in reducing the federal budget deficit, preventing the inheritance of VA-derived benefits by remote and/or non-dependent relatives who may have had very little or no contact with the recipient veteran, and limiting the incidence of fiduciary abuse. Since we hold that the Veterans failed to demonstrate a likelihood of success on the merits of their claim, it is unnecessary for us to consider whether they in fact would be irreparably harmed absent the preliminary injunction we have vacated.

## V.

To summarize:

We hold that the district court properly exercised jurisdiction over the Veterans' facial constitutional challenge to § 3205. We further hold that § 3205 reasonably furthers several legitimate governmental objectives, namely, reducing the federal deficit; preventing the inheritance of VA derived funds by remote and/or non-dependent heirs who may have had little or no contact with the veteran recipient and are therefore undeserving of a taxpayer-funded windfall; and preventing fiduciary abuse. Since the Veterans therefore failed

to demonstrate a likelihood of success on their claim that § 3205 unconstitutionally deprives them of equal protection of the law, we hold that the district court abused its discretion when it granted the Veterans' motion for a preliminary injunction. The order of the district court granting their motion for a preliminary injunction has been vacated. We remand the case to the district court to determine, in light of this opinion, whether the VA's motion for a Rule 12(b)(6) dismissal should be granted.

Vacated and remanded.