# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-2408

CONSTANCE COPELAND, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 2, 2012[1]                                                    Decided November 14, 2012)

*Zachary M. Stoltz*, with whom *Nicholas L. Phinney*, of Providence, Rhode Island, was on the brief for the appellant.

*Mark D. Gore,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Leslie C. Rogall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and LANCE, *Judges*.

KASOLD, *Chief Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed a dissenting opinion.

KASOLD, *Chief Judge*: Mrs. Constance Copeland, surviving spouse of veteran Donnie Copeland, appeals through counsel a June 8, 2011, decision of the Board of Veterans' Appeals (Board) that denied (1) accrued benefits for osteosarcoma of the left mandible[2] and (2) dependency and indemnity compensation (DIC) for Mr. Copeland's death due to osteosarcoma of the left mandible. Mrs. Copeland argues that (1) Congress's assignment of an effective date of October 10, 2008 (the date of enactment), for 38 U.S.C. § 5121A violated the equal protection component of the Fifth Amendment of the U.S. Constitution, and (2) the Board failed to provide an

---

[1] Oral argument in this case was held at Yale Law School in New Haven, Connecticut. The Court thanks the law school for its hospitality.

[2] The mandible is the "horseshoe-shaped bone forming the lower jaw." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1101 (32d ed. 2012).

adequate medical opinion pursuant to the duty to assist for DIC claims. The Secretary disputes Mrs. Copeland's arguments. Because no precedential decisions of this Court have addressed Mrs. Copeland's specific constitutional argument, a panel opinion is warranted. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons stated below, the Board decision on appeal will be affirmed.

## I. FACTS

Mr. Copeland served on active duty in the U.S. Air Force from 1974 to 1985. In May 1977, he complained of pain in the left side of his jaw and neck, which was assessed as a cervical muscle spasm, and in July 1978 he suffered a traumatic injury that fractured his #8 tooth–the right upper front tooth. In 1995, he reported a toothache and pain in the lower left region of his mouth and, in April 1996, was diagnosed with osteosarcoma of the left mandible. In November 1996, he filed a claim for benefits for this condition. The Board denied his claim in October 2002, and he did not appeal that decision.

In March 2007, Mr. Copeland requested the reopening of his claim, but he died in August 2007 as a result of, inter alia, osteosarcoma. Mrs. Copeland filed for accrued benefits and DIC in October 2007. *See* 38 U.S.C. § 5121(a) (allowing surviving spouses to file for due and unpaid benefits that the veteran "was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death"). Subsequent thereto, and at the heart of Mrs. Copeland's argument on appeal, Congress authorized a veteran's surviving spouse to be substituted for his or her deceased spouse in a pending claim for benefits "for the purposes of processing the claim to completion," if substitution is sought within one year of the veteran's death. 38 U.S.C. § 5121A; *see also* Pub. L. No. 110-389, § 212(c) (enacted Oct. 10, 2008). Congress determined that section 5121A would operate only where a veteran died on or after the date of the statute's enactment–here, October 10, 2008. *See id.* The Secretary's proposed interpretation of this statute is that a substitute claimant–as opposed to an accrued benefits claimant–"could submit evidence and generally would have the same rights regarding hearings, representation, and appeals as would have applied to the claimant had the claimant not died." Substitution in Case of Death of Claimant, 76 Fed. Reg. 8666, 8669 (Feb. 15, 2011).

2

In the June 2011 decision on appeal, the Board denied Mrs. Copeland's claim, because (1) the evidence demonstrated an in-service traumatic injury to a tooth on the upper right side, not the left mandible; (2) the first sign of permanent pain in the lower left region of Mr. Copeland's mouth appeared 10 years after service; and (3) the more probative medical evidence–a January 2000 medical opinion–found no causal relationship between the in-service traumatic injury and osteosarcoma. In weighing the medical evidence, the Board noted that the January 2000 VA medical opinion was based on an accurate presentation of the facts and included a complete rationale, while (1) a January 2007 letter[3] from a private physician was general and inconclusive, (2) a June 1998 letter from a treating physician contained incorrect facts, and (3) journal articles submitted by Mrs. Copeland were too general to be assigned significant probative weight.

## II. PARTIES' ARGUMENTS

Mrs. Copeland's primary argument is that Congress's assignment of an effective date of October 10, 2008, for the substitution of a surviving spouse as provided in 38 U.S.C. § 5121A violates the equal protection component of the Fifth Amendment. *See U.S. v. Kokinda*, 497 U.S. 720, 733 (1990) (noting that the Due Process Clause of the Fifth Amendment contains an equal protection component). More specifically, she asserts that she had to file a claim for accrued benefits under section 5121(a) because her husband died before October 10, 2008, while surviving spouses of veterans who died on or after October 10, 2008, may be substituted under section 5121A. She contends that there is no rational basis for this different treatment. The Secretary notes that "Congress had to draw the line somewhere" for implementing its new statute, *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993), and contends that Mrs. Copeland's argument essentially attacks the validity of the effective dates of all newly enacted statutes that are not made explicitly retroactive.

Mrs. Copeland's second argument is that the Board failed to provide an adequate medical opinion pursuant to the duty to assist for DIC claims. More specifically, she contends that the January 2000 VA medical opinion was not adequate because the doctor incorrectly stated that

---

[3] Although referring to an "August 2007 letter," the Board clearly was discussing the content of a January 2007 letter. Record (R.) at 10; *see* R. at 132.

(1) Mr. Copeland incurred no trauma to his left mandible, and (2) no significant studies clearly indicated a relationship between a tumor and trauma. The Secretary asserts that the January 2000 VA medical opinion was based on a review of the medical history and the pertinent medical literature, and fully informed the Board on the medical question at issue. *See D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) ("An opinion is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's 'evaluation . . . will be a fully informed one.'" (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994))).

## III. ANALYSIS

### A. Equal Protection

It is well established that, "[u]nless a statute . . . interferes with a fundamental right or discriminates against a suspect class, it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457 (1988) (internal quotation marks omitted). Mrs. Copeland does not suggest that (1) the effective date established by Congress interfered with a fundamental right, (2) surviving spouses of veterans who died before October 10, 2008, are a suspect class, or (3) her equal protection argument is not subject to rational basis review. Accordingly, the Court will assess the statute under rational basis review.

Under such review, the claimant must "negate every conceivable basis which might support" the classification resulting from the effective date established by Congress, *Beach Commc'ns*, 508 U.S. at 315, and show that the classification does not serve "*any* legitimate purpose," *Wright v. Gober*, 10 Vet.App. 343, 348 (1997). Rational basis review also must be undertaken with the recognition that

> [t]he task of classifying persons for . . . benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.

*U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (citation and internal quotation marks omitted).

4

Notably, arguments that an otherwise neutral effective date violates equal protection uniformly have been rejected. *See Lundeen v. Canadian Pac. Ry. Co.*, 532 F.3d 682, 691 (8th Cir. 2008) ("[Appellee's] equal protection claim is nothing more than an attack on the amendment's effective date. Every retroactive statute, by necessity, imposes different standards on parties affected by the statute, and those differences are directly tied to the statute's effective date. Thus, if we gave credence to [this argument] we would in essence be holding [that] Congress violates the equal protection clause every time it passes retroactive legislation."); *SeaRiver Maritime Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 680 (9th Cir. 2002) ("The fact that the legislature could have chosen an earlier or later effective date does not establish an equal protection violation."); *Luck v. D.C. Parole Bd.*, 996 F.2d 372, 374-75 (D.C. Cir. 1993) (finding no equal protection violation in legislation allowing time on parole to be credited as time served but only for parole time occurring after the legislation's effective date); *see also Cardoza-Fuentes v. Holder*, 362 F. App'x 799, 800 (9th Cir. 2010) (finding no equal protection violation where appellant's plea was entered after the effective date of the Anti-Terrorism and Effective Death Penalty Act because she was not similarly situated to those who entered pleas prior to the effective date of the act).

Mrs. Copeland presents no reason why the effective date established by Congress for section 5121A should be viewed any differently than those addressed in the cases noted above. More specifically, Mrs. Copeland does not explain why the selection of the legislation's enactment date as its effective date is "patently arbitrary and irrational," as required to find it constitutionally defective under the rational basis review. *Raugust v. Shinseki*, 23 Vet.App. 475, 479 (2010) (internal quotation marks omitted); *see Giancaterino v. Brown*, 7 Vet.App. 555, 559 (1995) (noting that a statute's presumption of rationality "'can only be overcome by a clear showing of arbitrariness and irrationality'" (quoting *Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981))); *see also Beach Commc'ns*, *supra*. Although Mrs. Copeland argues that she is treated differently from surviving spouses of veterans who died on or after October 10, 2008, disparate treatment without a demonstration of irrationality does not violate the U.S. Constitution. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000) ("[W]e will not overturn [legislation] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [legislation is] irrational." (internal quotation marks omitted)).

5

Moreover, under rational basis review, "any reasonably conceivable" reason for an assigned effective date will serve to sustain its constitutionality. *Heller v. Doe*, 509 U.S. 312, 320 (1993) (under rational basis review, government is not required to "actually articulate" its purpose, so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (internal quotation marks omitted)). Here, although the legislative history of section 5121A does not articulate the specific basis for the established effective date, we can conceive of at least two: (1) To avoid the procedural difficulties in retroactively applying a new law of substitution to claimants who had already filed for or been denied accrued benefits, *see Consol. Edison Co. of N.Y. Inc. v. Abraham*, 314 F.3d 1299, 1304 (Fed. Cir. 2002) ("administrative convenience of government" constitutes a rational basis for legislation); *see also U.S. v. Campos-Diaz*, 472 F.3d 1278, 1280 (11th Cir. 2006) (holding that the implementation of fast-track immigration sentencing programs in some districts and not others "is rationally related to the legitimate government interest of conserving . . . judicial resources and easing congestion in judicial districts with a high volume of immigration cases"); and (2) to protect the public fisc by not enacting retroactively a law potentially favorable to surviving spouses, *see Reeves v. West*, 11 Vet.App. 255, 260 (1998) ("Financial concerns are, of course, one of the most common and accepted bases for legislation that affects government spending. Therefore, a desire to reduce federal spending provides a rational basis for the enactment of [statutes]." (citations omitted)).

Overall, assigning an effective date is a common ingredient of implementing any statute, and "the fact [that] the [effective date] might have been [implemented] differently . . . is a matter for legislative, rather than judicial, consideration." *Fritz*, 449 U.S. at 179. Because the differing treatment is caused by an effective date that has a rational relationship to a legitimate governmental purpose for enacting legislation, the effective date of section 5121A does not violate the equal protection component of the Fifth Amendment. *See Kadrmas*, *supra*.[4]

---

[4] Although our dissenting colleague believes the Court lacks the power to find a statute unconstitutional on its face, we have no such misgivings. The plain language of 38 U.S.C. § 7261(a)(1) and (3) allow the Court to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions," and "hold unlawful and set aside [Board] decisions . . . contrary to constitutional right." The inability of the Court to find that a statute relied upon by the Board is unconstitutional would render null our authority to "decide all relevant questions of law" and "set aside [Board] decisions . . . contrary to constitutional right," and would vitiate our duty as a Court exercising judicial power to recognize that the Constitution is superior to statute. *Id.*; *see Freytag v. Comm'r*, 501 U.S. 868, 889 (1991) ("Our cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States."). We

6

## B. Inadequate Medical Opinion

Mrs. Copeland additionally argues that the Board failed to provide an adequate medical opinion pursuant to the duty to assist for DIC claims because the January 2000 medical opinion is inadequate. More specifically, she acknowledges that the opinion found no relationship between osteosarcoma and Mr. Copeland's in-service trauma, but contends that the doctor incorrectly stated that (1) Mr. Copeland incurred no trauma to his left mandible, and (2) no significant studies clearly indicate a relationship between a tumor and trauma.

---

find no difference between finding that Board decisions relying on a statute were contrary to constitutional right – which we are explicitly authorized to do – and finding that, for the purposes of bodies bound by this Court's precedents, a statute is unconstitutional. Moreover, although not binding on the Court, the parties agree. *See* Secretary's Supplemental Brief at 7 ("[L]egislative courts that possess [judicial] power must, in exercising it, recognize the superiority of the Constitution and . . . share in the power to invalidate statutes that are found to be inconsistent with the Constitution."); Appellant's Supplemental Brief at 2 (Court would be issuing advisory opinions if it could "consider the constitutionality of an action by VA but" lacked the authority to "strike down an unconstitutional statute" relied upon by VA).

The Court's authority to find a statute unconstitutional is well settled in precedential decisions of the Court. *See Reeves*, 11 Vet.App. at 257 ("[I]f a constitutional question is properly before the Court . . . , this Court has the power to make determinations regarding it."); *Giancaterino*, 7 Vet.App. at 557 ("[T]his Court is empowered to make determinations regarding constitutional claims."); *Dacoron v. Brown*, 4 Vet.App. 115, 119 (1993) ("Nothing in title 38 prohibits a constitutional challenge to any of the provisions from that title from being litigated in U.S. district court . . . . [But] nothing in the above [statement] implies that this Court does not have power to review claims pertaining to the constitutionality of statutory and regulatory provisions. Such authority is inherent in the Court's status as a court of law, and is expressly provided in 38 U.S.C. § 7261(a)(1) . . . ." (internal citations omitted)); *Strott v. Derwinski*, 1 Vet.App. 114, 116-18 (1991) (finding that section 402 of the Veterans' Judicial Review Act [VJRA] did not violate the equal protection component of the Fifth Amendment or the Fifth Amendment right to due process).

Our authority to decide constitutional issues also is recognized by other Federal appellate courts and in the legislative history establishing the Court. *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1032 (9th Cir. 2012) ("[Section 7261] leaves no doubt that the Veterans Court has the authority to adjudicate veterans' constitutional claims."); *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 656 (D.C. Cir. 2010) ("The [Court of Appeals for Veterans Claims (CAVC)] may review all legal issues, including constitutional claims . . . ."); *Johnson v. VA*, 351 F. App'x 288, 290 (10th Cir. 2009) ("While the B[oard] lacks power to determine constitutional questions regarding veterans benefits, Congress has granted such power to the CAVC and the Federal Circuit." (citations omitted); *Beamon v. Brown*, 125 F.3d 965, 971 (6th Cir. 1997) ("[T]he VJRA explicitly granted comprehensive and exclusive jurisdiction to the [CAVC] and the Federal Circuit . . . . This jurisdiction includes constitutional issues . . . ."); *see also Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000) (same); H.R. REP. No. 100-963, at 5 (1988) (CAVC authority extends to "all questions involving benefits under laws administered by the VA. This would include factual, legal, and constitutional questions."), 26 (CAVC is "intended to provide a more independent review by a body which is not bound by the [Secretary]'s view of the law, and that will be more clearly p[er]ceived as one which has as its sole function deciding claims in accordance with the Constitution and laws of the United States."); S. REP. No. 100-418, at 60 (1988) ("[Subsections (a)(1) through (a)(3)] are derived specifically from section 706 of the [Administrative Procedure Act (APA)]. Thus, it is the Committee's intention that the [CAVC] shall have the same authority as it would in cases arising under the APA to review and act upon . . . constitutional challenges.").

First, Mrs. Copeland fails to demonstrate that the VA doctor incorrectly stated that Mr. Copeland incurred no trauma to his left mandible. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal). Although Mrs. Copeland notes that her husband complained of pain in his left jaw in May 1977, the service medical record associated with that complaint does not reflect any assertion of trauma, and the assessment was a muscle strain. Moreover, Mr. Copeland first alleged in May 2000 that this 1977 pain was caused by trauma, and the Board found that this recent testimony was not an accurate presentation of the facts. Based on the record of proceedings, the Board's finding is plausible and not clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))); *see also U.S. Gypsum*, 333 U.S. at 396 (noting that "[w]here [witness] testimony is in conflict with contemporaneous documents[,] we can give it little weight," and finding lower court's determination to the contrary "clearly erroneous").

Mrs. Copeland also fails to demonstrate that the VA doctor incorrectly assessed the medical studies addressing trauma and osteosarcoma. Although Mrs. Copeland identifies in the record one reported case of a dog being diagnosed with a tumor where it had experienced a trauma six years prior, and one study noting that 11 of 88 adults diagnosed with osteosarcoma reported prior trauma in the area of the cancer, the doctor found "no *significant* studies . . . associat[ing] tumors with trauma *that occurred several years in the past*"[5] (R. at 472 (emphasis added)). Moreover, Mrs. Copeland fails to demonstrate any misstatement of fact by the doctor or that she has the medical expertise to question the doctor's assessment of the medical studies addressing trauma and osteosarcoma. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 495 (1992) (holding that, in general, a lay person may not "offer probative evidence on a matter normally regarded to be the province of an expert"); *see also Rizzo v. Shinseki*, 580 F.3d 1288, 1291 (Fed. Cir. 2009) (holding that a VA medical professional is presumed competent in the absence of clear evidence to the contrary); *Hilkert*, *supra*.

---

[5] As stated in part I, *supra*, the in-service trauma occurred in July 1978, but Mr. Copeland first mentioned pain in his left mandible in 1995.

Overall, Mrs. Copeland fails to demonstrate that the January 2000 VA medical opinion rested on an incorrect or incomplete understanding of the facts, or that the opinion otherwise is inadequate. *See D'Aries* and *Hilkert*, both *supra*.

## IV. CONCLUSION

Upon consideration of the foregoing, the June 8, 2011, Board decision is AFFIRMED.

HAGEL, *Judge*, dissenting: In a July 27, 2012, briefing order, issued at my request, the Court ordered the parties to consider 38 U.S.C. § 7261, the Court's scope of review statute, and submit memoranda of law discussing whether the Court has the power to strike down a statute on constitutional grounds. Despite the parties' agreement that the Court does have such power, and despite the Court's prior decisions in numerous cases that *implicitly presumed* that the Court has such power[6] (one of which, I must note with some embarrassment, I authored[7]), I remain unconvinced that this Court has the power to entertain *facial* constitutional challenges to statutes, as opposed to

---

[6] *See Mountford v. Shinseki*, 24 Vet.App. 443, 449 (2011) (concluding that 38 U.S.C. § 5313B(b)(1)(B) does not constitute a bill of attainder); *Dorward v. West*, 13 Vet.App. 295, 295 (2000) (per curiam order) (stating in dicta that "although the appellant ha[d] not attacked the validity of [38 U.S.C. §] 5110(g), . . . it appear[ed] to be valid"); *Reeves v. West*, 11 Vet.App. 255, 257-61 (1998) (holding that 38 U.S.C. § 3532(d) does not violate the Equal Protection Clause of the Fifth Amendment); *Fischer v. West*, 11 Vet.App. 121, 123-24 (1998) (finding no equal protection violation due to 38 U.S.C. § 1521's disparate treatment of war-time and peace-time veterans for purposes of establishing entitlement to non-service-connected pension benefits); *Wright v. Gober*, 10 Vet.App. 343, 347-48 (1997) (holding that 38 U.S.C. § 5110(a) and (b)(1) do not violate the Equal Protection Clause of the Fifth Amendment); *Giancaterino v. Brown*, 7 Vet.App. 555, 561 (1995) (holding that 38 U.S.C. § 103(e) does not violate the Equal Protection Clause of the Fifth Amendment because it is "rationally related to legitimate governmental interests"); *Saunders v. Brown*, 4 Vet.App. 320, 324-26 (1993) (holding that 38 U.S.C. § 1922(a) is not facially unconstitutional on due process or equal protection grounds and remanding the matter for further factual development necessary to adjudicate a separate facial constitutional challenge); *Latham v. Brown*, 4 Vet.App. 265, 266-69 (1993) (upholding the constitutionality of 38 U.S.C. § 1505(a) in the face of the appellant's arguments that it violated his right to equal protection and constituted a bill of attainder and an ex post facto law); *Dacoran v. Brown*, 4 Vet.App. 115, 118-19 (1993) (discussing the impact of the VJRA on the Supreme Court's holding in *Johnson v. Robison*, 415 U.S. 361 (1974) (which held that U.S. district courts may hear constitutional challenges to statutes relating to VA benefits), and concluding that the U.S. district courts continued to be appropriate fora for the disposition of constitutional challenges to statutes affecting the Secretary's provision of benefits to veterans and their dependents or survivors because "nothing in the VJRA or in the current provisions of 38 U.S.C. § 511(a) change[d] the Supreme Court's . . . analysis in *Johnson*" that such challenges arise under the Constitution).

[7] *Raugust v. Shinseki*, 23 Vet.App. 475, 479-80 (2010) (holding that 38 U.S.C. § 5303A does not violate the Equal Protection Clause).

9

rules or regulations promulgated by the Secretary. I wish to make it clear that my position on this matter does not stem from a belief that this Court should not possess such power–in fact, I believe it should–but from a belief that the power must be specifically given to the Court by Congress, and that Congress, in my view, has not seen fit to do so. Had Mrs. Copeland not asked the Court to overrule 38 U.S.C. § 5121A on the grounds that it, on its face, violates the Equal Protection Clause of the Fifth Amendment, I would not raise this issue at all. Because she has done so, however, I believe that the Court is compelled to address this issue.

Although I am satisfied that the Court has *jurisdiction* over the subject matter presented by Mrs. Copeland's appeal, because 38 U.S.C. § 5121(a), under which Mrs. Copeland's claim for accrued benefits was denied, and 38 U.S.C. § 5121A, the substitution statute she contends is unconstitutional, are laws that affect the provision of benefits by the Secretary, *see* 38 U.S.C. § 511(a), I conclude that the Court is not *authorized* to declare statutes unconstitutional. In other words, I believe that the Court is without power to determine whether 38 U.S.C. § 5121A violates the equal protection component of the Fifth Amendment's Due Process Clause, as Mrs. Copeland urges.

At the outset, a distinction must be drawn between the *subject matter jurisdiction* of a court on the one hand, and the *powers possessed* by a court on the other. The Federal Circuit has emphasized that "'power' and 'jurisdiction' are separate and distinct concepts." *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed. Cir. 2012). "'Subject matter jurisdiction' refers to the class of cases that the court is authorized to hear," whereas "'[p]ower' refers to the court's ability, when it has subject matter jurisdiction, to grant equitable and legal relief to a party." *Id.* "[A] court's power to grant relief is not synonymous with its ability to exercise jurisdiction, as these two concepts are separate and distinct. Power does not necessarily envelop the concept of jurisdiction." *Sioux Honey Ass'n*, 672 F.3d at 1052.

As explained above, this Court has subject matter jurisdiction in the present case because it has been authorized to hear the class of case presented by Mrs. Copeland's appeal, inasmuch as she appeals from a final and adverse Board decision made "under a law that affects the provision of benefits by the Secretary to veterans or the dependants or survivors of veterans." 38 U.S.C. § 511(a); *see also* 38 U.S.C. § 7252; *Bates v. Nicholson*, 398 F.3d 1355, 1364 (Fed. Cir. 2005). However,

10

Mrs. Copeland argues that this Court should reverse the Board decision because it was premised on a statute enacted by Congress that she contends is unconstitutional. She therefore raises the issue of whether the Court has the power to declare that–or any other–statute unconstitutional.

Federal courts "possess only that power authorized by Constitution and statute" and this power may "not be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In this respect, Congress has enacted legislation that specifically sets forth the scope of this Court's review of Board decisions and the relief it is authorized to provide appellants whose appeals are properly before the Court. Of particular importance is 38 U.S.C. § 7261, which provides, in relevant part:

> In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall . . . decide all relevant questions of law, *interpret constitutional*, statutory, and regulatory *provisions*, and determine the meaning or applicability of the terms of an action of the Secretary; [and] hold unlawful and set aside *decisions, findings . . ., conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be . . . contrary to constitutional right, power, privilege, or immunity . . . .*

38 U.S.C. § 7261(a)(1), (3)(B) (emphasis added).[8] Thus, this provision very clearly authorizes the Court to interpret relevant constitutional provisions and hold that *decisions, findings, conclusions, rules, and regulations that are issued or adopted by the Secretary, the Board, or the Chairman of the Board* are contrary to those constitutional provisions. It does *not*, however, authorize this Court to hold that *statutes enacted by Congress* are contrary to those constitutional provisions. *See Ventas, Inc. v. United States*, 381 F.3d 1156, 1161 (Fed. Cir. 2004) ("Where Congress includes certain exceptions in a statute, the maxim *expressio unius est exclusio alterius* presumes that those are the only exceptions Congress intended."); *McCray v. McGee*, 504 A.2d 1128, 1130 (D.C. 1986) (quoting 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 47.23 (4th ed. 1984) for the proposition that, "when a legislature makes express mention of one thing, the exclusion of others is implied, because 'there is an inference that all omissions should be understood as exclusions'").

---

[8] Holding that section 7261(a) pertains to the Court's power, rather than jurisdiction, is consistent with the Supreme Court's rationale in *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1205 (2011), insofar as section 7261(a), like 38 U.S.C. § 7266(a), was located in the subchapter of the VJRA entitled "Procedure," not the subchapter entitled "Organization and Jurisdiction."

Certainly, given that section 7261 otherwise enumerates the various relief that this Court may provide an appellant, one would expect that Congress would have included language permitting this Court to declare statutes unconstitutional if it had intended the Court to possess such power. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 169 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002) and explaining that "the canon *expressio unius est exclusio alterius . . .* has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence").

The absence of express language authorizing this Court to hold congressionally enacted statutes invalid on constitutional or any other grounds is all the more striking when one considers that Congress, in creating a system of judicial review of final Board decisions, *did* explicitly provide the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) with such authority. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Specifically, the Federal Circuit has been provided the "exclusive jurisdiction to review and decide any challenge to the *validity* of any *statute* or regulation or any interpretation thereof brought under" 38 U.S.C. § 7292, the provision establishing judicial review of certain aspects of this Court's decisions in the Federal Circuit, "and to interpret constitutional and statutory provisions to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (emphasis added). Thus, the Federal Circuit has been authorized not only to interpret constitutional and statutory provisions and to decide that relevant *regulations* are constitutionally invalid, but also to decide that relevant *statutes* are invalid because they conflict with the Constitution.[9] Certainly,

_____

[9] Alternatively, various Federal circuit courts of appeal have determined that, following the enactment of the VJRA, the sole constitutional challenge the district courts may continue to review are those that assert that statutes pertaining to the provision of VA benefits are facially unconstitutional. *See Sugrue v. Derwinksi*, 26 F.3d 8 (2d Cir. 1994) (district court lacked jurisdiction to hear plaintiff's claim that VA denied him due process of law and made an unconstitutional taking by denying him a certain disability rating); *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1498 (2d Cir. 1992) (district court lacked jurisdiction to hear plaintiff's claim that VA denied him due process of law by failing to provide him adequate medical care); *Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136 (2d Cir. 1992) (district court has jurisdiction to hear plaintiff's claim that a statute authorizing VA to suspend benefits payments to certain incompetent veterans violated the Fifth Amendment's guarantee of equal protection); *Zuspann v. Brown*, 60 F.3d 1156 (5th Cir. 1995) (district court lacked jurisdiction to hear plaintiff's claim that VA denied him due process of law by denying him adequate medical care); *Beamon v. Brown*, 125 F.3d 965 (6th Cir. 1997) (district court lacked jurisdiction to hear plaintiffs' claim that delays in the adjudication of VA benefits denied them due process of law); *Hicks v. Veterans Admin.*, 961 F.2d 1367 (8th Cir. 1992) (district court lacked jurisdiction

had Congress intended to authorize this Court to hold statutes unconstitutional, it could have included in section 7261 language similar to that found in section 7292(c). *See Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed. Cir. 2002) ("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate."); *Howard Univ. Hosp. v. D.C. Pub. Serv. Comm'n*, 952 A.2d 168, 174 (D.C. 2008) (quoting *Smith v. D.C. Dep't of Emp't Services*, 548 A.2d 97, 100 n.13 (D.C. 1998) in explaining that, "'[w]here a statute, with reference to one subject, contains a given provision, the omission of such [a] provision from a similar statute concerning a related subject . . . is significant to show [that] a different intention existed.'").

Accordingly, I would hold that, although the Court has the power to declare a VA rule or regulation unconstitutional on its face or as applied to a particular claimant, and although the Court has the power to find that decisions or other acts or omissions of the Secretary, the Board, or the Chairman of the Board are unconstitutional, the Court does not have the power to declare a statute unconstitutional on its face.[10] Therefore, I dissent.[11]

_____

to hear plaintiff's claim that VA violated the First Amendment by reducing his disability rating based on a letter from a VA doctor allegedly written in retaliation to the appellant's criticisms of VA medical treatment); *Tietjen v. VA*, 884 F.2d 514, 515 (9th Cir. 1989) (stating that 38 U.S.C. § 211(a), now § 511(a), "precludes judicial review of the [Veterans] Administrator's decisions of law or fact concerning the administration of benefits legislation," but "does not . . . bar review of 'constitutional attacks on legislation governing the provision of VA benefits"); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (district court lacked jurisdiction to hear plaintiffs' claims that delays in VA's provision of mental health care and adjudication of disability benefits claims denied them due process of law, but had jurisdiction to hear their claim that the VJRA denied them due process of law because it does not provide predecision hearings, discovery, subpoena power, and the retention of paid counsel before the regional office); *Hall v. U.S. Dept. of Veterans Affairs*, 85 F.3d 532, 534 (11th Cir. 1996)(district court lacked jurisdiction to hear plaintiff's claim that a VA regulation was unconstitutional); *Quiban v. VA*, 928 F.2d 1154 (D.C. Cir. 1991) (district court had jurisdiction to hear plaintiffs' claim that the statute excluding certain Filipino veterans from receiving VA benefits violated the Fifth Amendment's guarantee of equal protection). Thus, rather than avail themselves of the appellate process established by the VJRA, veterans, their survivors, and their dependents may instead file a complaint in Federal district court alleging that a particular statute or statutory provision barring an award of VA benefits is facially unconstitutional.

[10] I acknowledge that, as the author of *Raugust*, 23 Vet.App. at 479-80, I have added to the Court's line of cases that presume the Court has the power to entertain facial constitutional challenges to statutes. In that case, the Court analyzed an appellant's argument that 38 U.S.C. § 5303A violates the Equal Protection Clause of the Fifth Amendment based on that provision's 24-month minimum service requirement for establishing eligibility for most VA benefits. Before embarking on a constitutional analysis, the Court stated that it was authorized to do so under 38 U.S.C. § 7261(a)(3)(B). However, as indicated above, that provision only authorizes the Court to "hold unlawful and set aside decisions, findings . . ., conclusions, rules, and regulations issued or adopted by the Secretary, the Board . . ., or the Chairman of the Board found to be . . . contrary to constitutional right, power privilege, or immunity." 38 U.S.C. § 7261(a)(3)(B). It says nothing of the Court's authority to hold unlawful statutes and laws

13

enacted by Congress found to be contrary to the Constitution.  I now believe that the Court's statement to the contrary in *Raugust* was mistaken, as it was made without the benefit of the searching analysis undertaken here.

[11] If, however,  the Court had such power, then I would fully agree with the majority's analysis and finding that section 5121A is constitutional on its face.